## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMBERELY M. SCHULTZ, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>GLENS FALLS HOSPITAL,<br><br>        Defendant. | **Civil Action No.:**<br><br>1:25-cv-581 (MAD/PJE)<br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Kimberely Schultz ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Glens Falls Hospital ("GFH" or "Defendant") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### NATURE OF THE ACTION

1.     It is both unfair and unlawful for entities like GFH to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges GFH's unlawful practice of charging a "tobacco surcharge" without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. Under ERISA, wellness programs must offer, and provide notice of, a reasonable alternative standard that allows all participants to obtain the "***full reward***"—including refunds for surcharges paid while completing the program. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D). Instead, under the Glens Falls Hospital Health Plan (the "Plan"), GFH imposes a discriminatory tobacco surcharge without providing participants with

1

a reasonable alternative standard and fails to provide notice of the availability of a reasonable alternative standard, violating federal regulations and depriving employees of benefits to which they are entitled under ERISA.

2.     Tobacco surcharges have become more prevalent in recent years but to be lawful plans can impose these surcharges only in connection with *compliant* "wellness programs," meaning they must adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have issued clear regulatory criteria that "must be satisfied" to qualify for the statutory exception or safe-harbor, which they may invoke only if they can affirmatively demonstrate full compliance with all these strict requirements in response to claims that their program is discriminatory. Moreover, courts must defer to the agency's interpretation of its own regulations, if that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework, *Auer v. Robbins*, 519 U.S. 452 (1997), ensuring that plans cannot evade ERISA's anti-discrimination protections by selectively or improperly applying these rules.

3.     The strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor." The regulations make clear that for plans to be compliant, they must provide a clearly defined, reasonable alternative standard that allows all participants to obtain the full reward, including retroactive refunds of surcharges paid while completing the alternative standard. A wellness program must be genuinely designed to

improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. GFH's Plan fails to clearly establish a reasonable alternative standard, prevents tobacco users from qualifying for a $50 credit, does not notify employees that such an alternative is available, does not ensure that employees who complete the alternative receive the "full reward," and unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations.

4.      The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[1] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements

---

[1] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

5.     Outcome-based programs,[2] such as smoking cessation programs, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[3] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . . ." *Id.*, 33160 (emphasis added). GFH violates these requirements by failing to provide a reasonable alternative standard that provides full reimbursement to employees who complete that standard, operating a non-compliant penalty structure rather than a lawful wellness incentive, and failing to clearly communicate the availability of a reasonable alternative standard in all plan materials referencing tobacco-related

---

[2] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[3] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**") ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual*** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

premium differentials, including plan documents and summary plan descriptions ("SPDs"). *Id.* These failures constitute direct violations of ERISA's wellness program regulations.

6.    GFH cannot qualify for the statutory safe harbor because the Plan fails to satisfy the essential regulatory criteria, which "must be satisfied," (*Id.*, 33160) for a wellness program to be lawful under ERISA. Final Regulations, 33160. The core deficiency of GFH's wellness program is that it does not offer a reasonable alternative standard that provides the "full reward" to all participants who satisfy the alternative standard, as explicitly required by Section 702 of ERISA, 29 U.S.C. § 1182, 42 U.S.C. § 300gg-4(j)(3)(D), and 29 C.F.R. § 2590.702(f)(4). The Plan fails to offer a clearly defined, reasonable alternative standard that ensures employees who satisfy that standard receive a full refund of the additional premiums of roughly $40 per month for medical coverage. Instead, GFH retains these ill-gotten funds in its own accounts, earns interest on them, and therefore contributes less to the Plan. By failing to administer its surcharge program in compliance with ERISA's wellness regulations, GFH cannot claim the protection of the statutory safe harbor and is liable for its unlawful surcharge scheme.

7.    By failing to provide an alternative standard or a mechanism for retroactive reimbursement to those who satisfy that standard, GFH operates an unlawful surcharge program that not only denies employees who smoke the opportunity to avoid the penalty, as required by law, but also prevents them from receiving a $50 credit that is available to non-tobacco users. This is not a minor technical failure—it is a fundamental violation of the regulation's core purpose: ensuring that participants have an opportunity to avoid the smoking surcharge and receive the same financial benefit as those who meet the initial standard (i.e., non-smokers).

8.    Further, GFH failed to provide notice. GFH failed to include a description of the terms of an alternative standard and failed to include contact information for obtaining the

alternative standard. GFH failed to include reference to the wellness program in the GFH Benefits Guide, despite the Departments' clear instructions that, for ERISA plans, wellness programs are required to be disclosed in these documents if compliance affects premiums. Final Regulations, 33166 ("a plan disclosure that references premium differential based on tobacco use . . . must include this disclosure"). These standalone violations of the Final Regulations disqualify GFH from asserting the affirmative defense in response to the allegations herein that its tobacco surcharge program is discriminatory and violates ERISA. Upon information and belief, GFH failed to include the required notice in all Plan/Benefits materials as required. Again, because Defendant's wellness program does not satisfy the necessary regulatory criteria for a "program[] of health promotion," Defendant's wellness program fails to qualify under the statutory safe harbor, meaning the tobacco surcharge they impose on participants is unlawful and discriminatory in violation of ERISA.

9.    This Complaint alleges that GFH imposes a discriminatory and unlawful tobacco surcharge. GFH bears the burden of proving that its tobacco surcharge program fully complies with every regulatory requirement under ERISA and its implementing regulations, including providing a clearly defined, reasonable alternative standard that allows all participants to avoid the surcharge and receive a full refund if they satisfy the alternative. GFH cannot meet this burden because its Plan does not appear to offer any alternative standard at all. Without a reasonable alternative standard, GFH's surcharge is not a lawful wellness incentive, but an impermissible penalty imposed on employees based on a health factor. Even if an alternative standard does exist, GFH fails to provide clear notice of its availability in all plan materials discussing the surcharge. Its failure to offer and communicate a reasonable alternative standard makes its surcharge program facially unlawful under ERISA, and no amount of *post hoc* justifications can cure this fundamental

defect. GFH's Plan is not a "program[] of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

10.    Participants like Ms. Schultz are permitted to challenge whether an employer's wellness program complies with the regulatory criteria that must be satisfied to qualify for the statutory safe harbor. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions, the burden shifts to the employer to prove that its wellness program satisfies all five regulatory requirements, including the obligation to offer a clearly defined reasonable alternative standard and provide the "full reward" to those who satisfy it. *Cunningham v. Cornell Univ.*, No. 23-1007, 2025 U.S. LEXIS 1458, *13 (Apr. 17, 2025)

11.    Plaintiff is an employee of GFH who paid the unlawful tobacco surcharges to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiff and continues to impose such a burden on those similarly situated.

12.    Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent GFH from continuing to profit from its violations under 29 U.S.C. § 1109.  Under 29 U.S.C. § 1109, Defendant is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf of herself and the Plan as a whole, seek appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## **PARTIES**

13.    Plaintiff Kimberely Schultz is, and at all times mentioned herein was, an individual citizen of the State of New York residing in the County of Washington. Plaintiff is an employee

of GFH, who paid a tobacco surcharge of roughly $20 per paycheck (roughly $520 annually) associated with the health insurance offered through GFH. Plaintiff is required to pay this tobacco surcharge to maintain health insurance under the Plan.

14.    Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

15.    Defendant is a not-for-profit corporation with its principal place of business in Glens Falls, New York, and is an affiliate of the Albany Med Health System. Defendant operates as a regional hospital and healthcare provider, delivering a range of medical and surgical services throughout the region.

16.    GFH is the sponsor of the Plan and the Plan Administrator under 29 U.S.C. § 1002(16). GFH employs over 2,000 employees and the Plan, as of December 31, 2023, had over 2,200 participants. GFH's employee benefit plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

## JURISDICTION AND VENUE

17.    The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

18.    This Court has personal jurisdiction over Defendant because it is headquartered in this District. Defendant has purposefully availed itself of the privilege of conducting business in New York.

19.    Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because Defendant is headquartered in this District and this is a District in which Defendant may be found.

## FACTUAL BACKGROUND

8

## I.    DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

### A. Statutory and Regulatory Requirements

20.    To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1).

21.    The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to *programs of health promotion and disease prevention*" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

22.    Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan

requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

23.    Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the Affordable Care and Public Health Service Acts in 2010, the Departments, published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

24.    The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden shifts to the employer to prove that the surcharge is non-discriminatory because the wellness plan qualifies as a "program[] of health promotion and disease prevention" that satisfies *all* the necessary regulatory criteria.

25.    The regulations are not optional because they serve as the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination

provisions by ensuring that wellness programs do not arbitrarily penalize participants and preventing employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a program fails to meet even one of these stringent requirements the program cannot benefit from the statutory carve-out and remains in violation of the statute's anti-discrimination provisions. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section *only if __all__ of the [] requirements are satisfied*.").[4]

**B. Regulatory Criteria**

26.    To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a

---

[4] Congress adopted these regulatory criteria when, through the Patient Protection and Affordable Care Act, it amended the Public Health Service Act, incorporating these criteria into ERISA. *See* 42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1) ("[T]he provisions of part A of title XXVII of the Public Health Service Act [42 U.S.C. § 300gg *et seq*.] (as amended by the Patient Protection and Affordable Care Act) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart[.]").

subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . .” § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: “The ***full reward*** under the outcome-based wellness program must be available to ***all similarly situated individuals***.”29 C.F.R. § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants’ personal physician’s recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

27.     The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute’s protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

28.     Regarding the first criteria, “the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease.” Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

29.     A key requirement of the fourth criterion for outcome-based programs is that the “full reward” must be available to “all similarly situated individuals[,]” regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165.

Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual* participating in the program should be able to receive the *full amount of any reward or incentive*. . . ." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is *mandatory*, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, *the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year*. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine *how* to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) *as long as . . . the individual receives the full amount of the reward*.

Final Regulations, 33163 (emphases added).

30.    The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id.* The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id.*; Final Regulations, 33180.

31.    For health contingent wellness programs, the DOL Regulations require the notice be disclosed "in all plan materials describing the terms of" the program. 29 C.F.R. § 2590.702(f)(3) and (4) (emphasis added); *see also* 42 U.S.C § 300gg-4(j)(3)(E). Further, the Final Regulations

establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Thus, plans that charge their participants more and fail to provide a reasonable alternative standard or the requisite notice violate these requirements, preventing these wellness programs from qualifying for the safe-harbor exception and establishing them as discriminatory wellness programs.

32.    GFH's tobacco surcharge is unlawful because it fails to offer a compliant wellness program in accordance with the Final Regulations. As discussed, the Final Regulations provide that outcome-based wellness programs, such as those involving tobacco cessation programs, are compliant under ERISA *only if all regulatory requirements are satisfied*. *See* 29 C.F.R. § 2590.702(f)(4).

33.    The Final Regulations provide clear examples of compliant and non-compliant tobacco surcharge programs. In Example 6, the group health plan imposes a tobacco use surcharge as part of its wellness program, but it remains compliant with ERISA regulations because it offers a reasonable alternative standard in the form of a smoking cessation program. Final Regulations, 33180. The hypothetical plan imposes a premium surcharge on tobacco users, which is determined annually based on a health risk assessment (i.e., participants self-identify as smokers). To avoid the surcharge, participants who use tobacco are not required to stop smoking entirely; instead, they can participate in a smoking cessation program offered by the plan. *Id.* The smoking cessation program is a "reasonable alternative standard" because it gives participants another way to avoid the surcharge, even if they are unable to quit smoking. *Id.*

14

34.    The plan facilitates participation in the alternative standard by ensuring the program is not unreasonably burdensome and is cost-free to participants. *Id.* Critically, participants can avoid the surcharge simply by completing the smoking cessation program—they are not penalized for failing to quit smoking. *Id.*

35.    The hypothetical plan in Example 6 also meets the strict notice requirements under ERISA regulations because it clearly informs participants (a) about the availability of the alternative standard (i.e., the smoking cessation program), (b) how to access the program, including providing contact information, and (c) that the plan will accommodate recommendations from the participant's personal physician if the cessation program needs to be adjusted for medical reasons. *Id.*

36.    Further, the example provides that participants can qualify for the reward (or avoid the surcharge) at least once per year. *Id.* The tobacco surcharge described in Example 6 of the Final Regulations is permissible under ERISA because the program is reasonably designed to promote health by offering tobacco users a legitimate alternative path to avoid the surcharge. The plan ensures the alternative standard is reasonable by providing access to the "full reward" for "all similarly situated individuals" and does not impose unnecessary burdens on participants. Further, the plan fully complies with the notice requirements by clearly disclosing the smoking cessation program, contact information, and the option for physician accommodations. The Final Regulations conclude that the premium differential is not discriminatory because the employer satisfies all the regulatory requirements under 29 C.F.R. § 2590.702(f)(4)(i), (iii), (iv), and (v) and avoids being classified as a discriminatory wellness program.

37.    Unlike Example 6 of the DOL Regulations, GFH does not provide participants with any reasonable alternative standard to avoid the tobacco surcharge it imposes on participants.

There is no smoking cessation program, waiver, or alternative route for tobacco users to obtain the "full reward" (i.e., avoiding the surcharge). The only avenue for smokers to avoid the surcharge is to quit smoking. Thus, tobacco users are penalized based solely on their status as smokers, which violates ERISA's non-discrimination provisions.

38.     GFH should have implemented a reasonable alternative standard in the form of a smoking cessation program that allowed users to avoid the surcharge for the entire plan year, regardless of whether they quit using tobacco. GFH should have offered the program at no cost to participants and ensured that it was accessible and not overly burdensome by, for example, providing for convenient times and locations.

39.     Additionally, GFH should have included clear and specific notice of the availability of the reasonable alternative standard in all Plan materials discussing the surcharge. That notice should have stated that an alternative standard (or waiver) was available, and GFH should have provided the contact information for obtaining the alternative standard. Further, GFH should have included a statement that the Plan would accommodate the recommendations of the participant's personal physician regarding the medical appropriateness of the alternative standard.

40.     GFH's Plan materials—the Plan document, SPD, and, upon information and belief, the annual benefits guides—fail entirely to mention the availability of a reasonable alternative standard because no such alternative exists. Without this disclosure, participants are unaware of their rights under ERISA and cannot access alternative means to avoid the surcharge.

41.     Had Defendant provided participants with adequate notice of the availability of a reasonable alternative standard, including clear instructions and contact information in all plan materials referencing the surcharge as well as a notice of participants' rights to have their personal physician's recommendations accommodated, Plaintiff and similarly situated individuals could have taken steps to avoid or reduce the unlawful tobacco surcharge. Defendant's failure to provide

this required notice deprived participants of the opportunity to exercise their rights under ERISA and directly contributed to the financial harm suffered by the Class.

42.     By failing to meet these requirements, GFH's tobacco surcharge is discriminatory, and in clear violation of ERISA and its implementing regulations.

43.     Allowing entities like GFH to exploit their participants and unlawfully extract millions from them under the guise of a wellness program that is, in reality, a cash grab, directly contradicts ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law.

## II.     DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

44.     GFH's wellness program violates ERISA and its implementing regulations by failing to provide a "program[] of health promotion or disease prevention" that complies with the regulatory framework. To qualify for ERISA's safe harbor, a wellness program must offer a clearly defined, reasonable alternative standard and ensure that all participants who satisfy it receive the full reward. GFH's Plan fails to meet these requirements. It does not clearly offer a reasonable alternative standard and fails to provide proper notice of the alternative standard in all plan materials discussing the surcharge.

45.     Specifically, the program imposes a punitive premium increase of between roughly $10 and $40 biweekly depending on the tier selected and whether the employee chooses coverage for his or her spouse and family. There is no avenue for tobacco-using participants to avoid this premium increase aside from quitting tobacco and being nicotine free. It is unclear whether these participants even have the option of having the surcharge removed on a *prospective* basis, despite

regulatory requirements that the "full reward" must be provided to "all similarly situated individuals" who satisfy a reasonable alternative standard.

46.    GFH also fails to ensure that all employees who complete an alternative standard receive the "full reward." By forcing participants to quit smoking to receive a refund, the Plan fails to offer an *alternative* standard. By failing to clearly offer a reasonable alternative standard, GFH's surcharge program violates ERISA's regulatory framework. The Plan does not provide employees with at least one opportunity per year to qualify for an alternative standard, does not ensure that all similarly situated individuals who satisfy the alternative standard receive a full refund, and fails to provide clear notice of the alternative standard in all plan materials that reference the surcharge. These deficiencies make GFH's surcharge an impermissible cost-shifting scheme rather than a compliant health promotion program.

47.    Moreover, the Plan fails to provide participants with notice under 29 C.F.R. § 2590.702(f)(4)(v). Because the Plan fails to offer an alternative standard, it has not provided notice of a compliant standard. Further, none of Defendant's materials addressing the tobacco surcharge include a statement that a participant's physician's recommendations will be accommodated, as required under ERISA regulations. This omission not only fails to meet the regulatory requirements under ERISA but also undermines the purpose of wellness programs, which is to promote health outcomes in an inclusive and equitable manner. By failing to include this critical information in its materials, Defendant prevented participants, particularly those who may have unique medical conditions or disabilities, from knowing that they have the option to work with their healthcare provider to identify and recommend a reasonable alternative standard tailored to their individual needs. Additionally, the tobacco surcharge is entirely omitted from the Plan's SPD, and upon information and belief, it is also absent from the Plan document. The absence of any

mention of the surcharge in these key documents, despite clear guidance from the Departments that such notice is required,[5] deprives participants of the information necessary to understand their rights, including their right to a reasonable alternative standard that could be constructed by the participant's physician.

48.    Plaintiff paid this tobacco surcharge and continues to pay it.

49.    GFH's wellness program fundamentally fails to comply with ERISA's regulatory requirements because it does not offer an alternative standard at least once a year that provides those who satisfy that standard with the "full reward" and fails to provide notice of the same or in all the Plan materials discussing the tobacco surcharge. Under ERISA, a wellness program cannot claim safe harbor protection unless every criterion of the regulatory framework is satisfied. *See* 29 C.F.R. § 2590.702(f)(4). Defendant's Plan fails to meet nearly all of the regulatory criteria and, therefore, Defendant cannot qualify for the statutory exception allowing for premium differentials.

## CLASS DEFINITION AND ALLEGATIONS

50.    Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

51.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Tobacco Surcharge Class**

---

[5] *See* § 2590.702(f)(4)(v) ("The plan or issuer **must disclose in all plan materials** describing the terms of an outcome-based wellness program, and **in any disclosure that an individual did not satisfy an initial outcome-based standard**, the availability of a reasonable alternative standard to qualify for the reward . . . including contact information for obtaining a reasonable alternative standard and **a statement that recommendations of an individual's personal physician will be accommodated**") (emphases added).

> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

52. Excluded from the Class are GFH's officers and directors.

53. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

54. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

55. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

56. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant's tobacco surcharge discriminates and retaliates against participants based on a health status related factor;

b. Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

c. Whether Defendant provided the proper notices in all the plan materials describing the surcharge;

d. Whether Defendant's wellness program violates ERISA and the applicable regulations;

e. Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge;

f. Whether Defendant engaged in prohibited transactions by using by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan

g. Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its wellness program to ensure compliance with ERISA and applicable regulations;

h. The appropriate mechanisms to determine damages on a class-wide basis

57.    **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

58.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

59.    **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court

system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

60.     Plaintiff seeks injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
**UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE**
**(Violation of 29 U.S.C. § 1182)**

61.     Plaintiff re-alleges and incorporates herein by reference allegations 1–58 of this Complaint.

62.     Defendant unlawfully imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory premiums ranging between roughly $10 and $40 monthly on participants who use tobacco, without complying with the regulatory requirements, Defendant is violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1). This discrimination stems from Defendant's decision not to provide a reasonable alternative standard that ensures participants who satisfy that standard are provided with the full reward, in violation of ERISA and the Final Regulations.

63.    ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." *See* 29 U.S.C. § 1182(b). Defendant's Plan violates this prohibition by failing to offer an opportunity to qualify for the alternative standard at least once a year; failing to provide a *reasonable* alternative standard; failing to provide an alternative standard that provides those who satisfy that standard with the "full reward;" and failing to provide proper notice of the alternative standard. Thus, Defendant's tobacco surcharge program fails to satisfy nearly all the regulatory requirements to qualify for the statutory safe-harbor, 29 U.S.C. § 1182(b)(2)(B).

64.    Defendant's imposition of the tobacco surcharge violates ERISA § 702 and the Final Regulations, including but not limited to 45 C.F.R. § 146.121(f)(4) and 29 C.F.R. § 2590.702(f)(4). Defendant's wellness program is non-compliant because it does not comply with most of the regulatory framework

65.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy several of the five criteria that plans must comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

66.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate remedies to redress Defendant's violations of ERISA's anti-discrimination provisions outlined in § 1182(b) and § 300gg-4, including but not limited to injunctive relief, restitution, and any other relief necessary to remedy Defendant's unlawful conduct, as set forth in the Prayer for Relief.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**
**(Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)**

67.     Plaintiff re-alleges and incorporates herein by reference allegations 1–58 of this Complaint.

68.     ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

69.     Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to exclusively benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks and using these funds to offset its own obligations to contribute to the Plan. Defendant breached its fiduciary duty by assessing and collecting the tobacco surcharge in violation of the law and in violation of the terms of the Plan, and used those additional funds to reduce its own costs associated with funding the plan, thereby reducing the amount of contributions

it was required to make to the Plan. Defendant had a duty to deposit the tobacco surcharge amounts into the Plan as they were collected from Plaintiff and other. Instead, upon information and belief, Defendant used those amounts for its own benefit, earning interest on those funds, and did not deposit the ill-gotten funds into the Plan; rather, it used those funds to profit at the expense of the Plan and its participants.

70.    Each year, Defendant administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management and administration of the Plan and its surcharge programs, including the decision not to offer a reasonable alternative standard. Each year, Defendant exercised discretionary authority with respect to the administration and implementation of the unlawful surcharge program by administering a surcharge program without providing reasonable alternatives that allowed "all similarly situated individuals" to avoid the surcharge for the entire plan year, dictated the eligibility criteria and penalties for noncompliance, and failed to provide participants with the necessary notices related to the reasonable alternative standard.

71.    GFH controlled and disseminated to all employees the contents of the Benefits Guide discussing the tobacco surcharge but failed to notify participants of a reasonable alternative standard by which they could avoid the entire year of surcharges regardless of when they satisfied an alternative standard in violation of the regulations. Further, GFH failed to adequately and regularly review the terms of its tobacco wellness program and the accompanying communications to participants to ensure they complied with ERISA and the regulations. Year after year, Defendant failed to properly institute safeguards against administering a program that violated the statute and implementing regulations. These actions reflect GFH's active role in administering a non-

compliant "program[] of health promotion and disease prevention," resulting in an unlawful and discriminatory tobacco surcharge in violation of ERISA.

72.    GFH breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. GFH acted disloyally by causing Plaintiff and members of the Class to pay tobacco surcharges that were unlawful because they were associated with a non-compliant wellness program.

73.    As a result of the imposition of the unlawful and discriminatory tobacco surcharges, GFH enriched itself at the expense of the Plan, resulting in it receiving a windfall. Defendant breached its fiduciary duties by prioritizing its own financial interests over the interests of Plan participants by deducting from participants' paychecks the amounts of the surcharges without properly administering an alternative standard. By administering the surcharge program in a manner that precluded "all similarly situated individuals" from obtaining the "full reward," and by failing to adequately disclose participants' rights under tobacco surcharge program, GFH administered a program that disproportionately benefited itself at the expense of Plan participants. This practice resulted in an unjust enrichment to GFH at the expense of Plan participants, demonstrating a failure to act solely in the interests of participants and beneficiaries, in violation of ERISA's duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

74.    Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, GFH caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—and improperly used Plan assets for its own financial advantage, in violation of 29 U.S.C. § 1106(a)(1). GFH is a party in interest, as that term is defined

under 29 U.S.C. § 1002(14), because it is both a Plan fiduciary and the employer of Plan participants.

75.    By retaining the amounts of the tobacco surcharges, GFH increased its own monies and saved the money it would have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing and using plan assets for their own benefit. By retaining the surcharges without providing participants with the "full reward" to which they are entitled, GFH improperly benefitted from its own surcharge program at the expense of Plan participants.

76.    Defendant breached its fiduciary duties by: failing to properly disclose material information about the wellness programs to participants, thereby misleading or depriving them of the ability to make informed decision; administering a wellness program that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the wellness programs (and the Plan) and Plan communications to ensure they properly complied with the regulatory requirements in violation of 29 U.S.C. § 1104(a)(1)(B). These breaches caused Plaintiff and the Class to incur unlawful and discriminatory surcharges. Had Defendant conformed with their fiduciary duties under ERISA, they would have offered a reasonable alternative standard at least once each plan year that allowed all similarly situated individuals to obtain the "full reward," and would have reviewed the terms of the Plan and the surcharge program, as well as the

communications sent to participants regarding that surcharge program, to ensure they complied with ERISA and the implementing regulations.

77.     As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

78.     Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A.  An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

B.  A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C.  An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharge;

D.  A declaratory judgment that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to notify participants of an alternative

standard, and for failing to adequately monitor the terms of the Plan and surcharge program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E.  An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F.  Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendant to remit all previously collected surcharges;

G.  Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H.  Restitution of all surcharge amounts Defendant collected;

I.  Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J.  Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K.  An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L.  An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.  Any other relief the Court determines is just and proper.

Dated:  May 8, 2025                          Respectfully submitted,

                                             **SIRI & GLIMSTAD LLP**

                                             /s/ *Marina Resciniti*
                                             _____

                                             Marina Resciniti (Bar No. 700734)
                                             Oren Faircloth (*pro hac vice* forthcoming)
                                             Kimberly Dodson (*pro hac vice* forthcoming)
                                             745 Fifth Avenue, Suite 500
                                             New York, New York 10151
                                             Tel: (212) 532-1091
                                             E: mresciniti@sirillp.com
                                             E: ofaircloth@sirillp.com
                                             E: kdodson@sirillp.com

                                             *Attorneys for Plaintiff and the Proposed Class*