UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KIMBERELY M. SCHULTZ, *on behalf of herself and all others similarly situated*,

                     **Plaintiff,**

    vs.

GLENS FALLS HOSPITAL,

                     **Defendant.**

1:25-CV-00581
(MAD/PJE)

---

APPEARANCES:

**SIRI & GLIMSTAD LLP**
745 Fifth Avenue - Suite 500
New York, New York 10151
Attorneys for Plaintiff

**BOND SCHOENECK & KING, PLLC**
One Lincoln Center
Syracuse, New York 13202
Attorneys for Defendant

**BOND, SCHOENECK & KING, PLLC**
268 Broadway
Suite 104
Saratoga Springs, New York 12866
Attorneys for Defendant

OF COUNSEL:

**MARINA RESCINITI, ESQ.**
**OREN FAIRCLOTH, ESQ.**

**JACQUELINE ZAHN, ESQ.**
**LOUIS ORBACH, ESQ.**

**MICHAEL D. BILLOK, ESQ.**

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Kimberely M. Schultz brings this putative class action, alleging that the health insurance plan offered by Defendant Glens Falls Hospital imposes a tobacco surcharge in violation of the Employee Retirement Income Security Act ("ERISA"). *See generally* Dkt. No. 1.

Defendant moves to dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff lacks Article III standing to bring her claims, and that the complaint fails to state a claim on which relief can be granted.  *See* Dkt. No. 21.[1]  For the reasons that follow, Defendant's motion is granted in part and denied in part.

## II. BACKGROUND

### A.     Relevant Statutory and Regulatory Landscape

The Court will begin with a discussion of the statues and regulations relevant to Plaintiff's claims.

Under ERISA, an employer administering a group health plan "may not require any individual . . . to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual."  29 U.S.C. § 1182(b)(1).  Section 1182 lists eight health-status related factors: health status, medical condition (including both physical and mental illnesses), claims experience, receipt of health care, medical history, genetic information, evidence of insurability (including conditions arising out of acts of domestic violence), and disability.  *See id.* § 1182(a)(1).

However, that provision of ERISA does not prevent an employer from "establishing premium discounts or rebates . . . in return for [an employee's] adherence to programs of health promotion and disease prevention."  29 U.S.C. § 1182(b)(2)(B); *see also* 42 U.S.C. § 300gg-4(b)(2)(B); *Bokma v. Performance Food Grp., Inc.*, 783 F. Supp. 3d 882, 887-88 (E.D. Va. 2025)

---

[1]  The parties have also submitted numerous notices of supplemental authority.  *See* Dkt. Nos. 27, 28, 29, 30, 31, 32, 33, 34, 35.  None of this supplemental authority is binding on this Court, and is merely additional persuasive authority.  Nevertheless, the Court has carefully considered all materials submitted by the parties.

(reviewing relevant statutory and regulatory background).  These programs are referred to as "wellness programs" under 42 U.S.C. § 300gg-4(j).

The Public Health Service Act ("PHSA"), which was amended and incorporated into ERISA by the Patient Protection and Affordable Care Act, *see* 29 U.S.C. § 1185d(a)(1); *Plesha v. Ascension Health Alliance*, No. 24-CV-1459, 2026 WL 279321, *2 (E.D. Mo. Feb. 3, 2026), sets forth the conditions that a wellness program must meet to qualify as a permissible program of health promotion or disease prevention rather than a discriminatory surcharge, *see* 42 U.S.C. § 300gg-4(j).  To qualify, a wellness program must meet certain statutory requirements, including that it "be reasonably designed to promote health or prevent disease[,]" make available the "full reward" to "all similarly situated individuals," and must "disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard[.]"  42 U.S.C. § 300gg-4(j)(3)(B)-(E).  A reward for compliance with a qualifying wellness program may include "the absence of a surcharge" for the complying employee.  42 U.S.C. § 300g-4(j)(3)(A). "The upshot of these provisions is that employers may surcharge plan participants who do not comply with such 'wellness programs,' and may offer incentives to plan participants who engage in wellness programs, without running afoul of ERISA's nondiscrimination rules in Section 1182."  *Chirinian v. Travelers Cos., Inc.*, No. 24-CV-3956, 2025 WL 2147271, *1 (D. Minn. July 29, 2025).

In 2013, the Department of Labor ("DOL") incorporated these requirements into federal regulations (the "Regulations") that further specify the requirements that a wellness program must meet.  *See Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33181-86 (June 3, 2013) (codified at 29 C.F.R. § 2590.702).  The Regulations expound upon the statutory requirements described above and provide a series of examples of

3

how a compliant wellness program may be structured. *See generally id.* Three specific

regulations are relevant to the issues in the present matter: 29 C.F.R. § 2590.702(f)(4)(i), 29

C.F.R. § 2590.702(f)(4)(iv), and 29 C.F.R. § 2590.702(f)(4)(v). A decision issued in the District

of Minnesota thoroughly explains these three relevant regulations as follows:

> *First*, the wellness program "must give individuals eligible for the program the opportunity to qualify for the reward under the program at least once per year." 29 C.F.R. § 2590.702(f)(4)(i). The once-per-year requirement is a "bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33162 (June 3, 2013) (codified at 29 C.F.R. § 2590.702) . . . .
>
> *Second*, the "full reward" for completing the wellness program "must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). The Department of Labor interprets this provision to require health plans to offer "a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward" for any individual who does not meet the applicable health standard (in this case, being tobacco-free). *Id.* § 2590.702(f)(4)(iv)(A). Moreover, if a plan participant's personal physician states that meeting the applicable health standard is not medically appropriate for that participant, the plan "must provide a reasonable alternative standard that accommodates the recommendations of the individual's personal physician with regard to medical appropriateness." *Id.* § 2590.702(f)(4)(iv)(C)(4).
>
> *Third*, the plan "must disclose in all plan materials describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward," including "contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." *Id.* § 2590.702(f)(4)(v).

*Chirinian*, 2025 WL 2147271, at *1-2.

4

Additionally, the Regulations impose particular requirements based on the type of wellness program at issue.  The first category, "participatory programs" requires only participation in the program rather than the attainment of a particular goal, such as "[a] program that reimburses employees for the costs of participating, or that otherwise provides a reward for participating, in a smoking cessation program without regard to whether the employee quits smoking."  *See* 29 C.F.R. § 2590.702(f)(1)(ii)(D).  The second category, "health-contingent programs," includes programs which require participants "to satisfy a standard related to a health factor to obtain a reward."  *Id.* § 2590.702(f)(1)(iii).  Further, within the category of health-contingent programs, the Regulations distinguish "activity-only programs," which "require[ ] an individual to perform or complete an activity related to a health factor," *id.* § 2590.702(f)(1)(iv); and "outcome-based programs," which "require[ ] an individual to attain or maintain a specific health outcome," *id.* § 2590.702(f)(1)(v).

**B.      Factual Background**

Plaintiff is an employee of Glens Falls Hospital and receives health insurance through the Glens Falls Hospital Health Plan (the "Plan").  Dkt. No. 1 at ¶¶ 1, 13-14.  Defendant is the sponsor of the Plan and the Plan Administrator.  *See id.* at ¶ 16.  Under the Plan, Plaintiff is charged a "tobacco surcharge" of approximately $20 per paychek ($520 per year).  *See id.* at ¶¶ 1, 13.  To maintain health insurance under the Plan, Plaintiff must pay this surcharge.  *See id.* at ¶ 13.  However, according to the complaint, Defendant has failed to abide by ERISA's statutory requirements and implementing regulations and, therefore, the tobacco surcharge is unlawful.  *See id.* at ¶ 1.  Plaintiff brings her suit individually and on behalf of all other similarly situated individuals.  *See id.* at ¶ 12.

Plaintiff brings two claims; the Court will refer to these claims as "Count One" and "Count Two." In Count One, Plaintiff alleges that Defendant's surcharge is unlawful because it is imposed in the absence of a wellness program, as required by ERISA. Specifically, Count One is based on allegations that the Plan discriminates based on a "health status-related factor," in violation of 29 U.S.C. § 1182, by failing to offer an opportunity for participants to qualify for an alternative standard at least once a year, failing to provide a reasonable alternative standard, failing to provide an alternative standard that provides those who satisfy that standard with the "full reward," and failing to provide proper notice of the reasonable alternative standard. *See id.* at ¶¶ 62, 63. In Count Two, Plaintiff alleges that Defendant breached its fiduciary duties to the Plan and Plan participants in connection with the imposition and collection of the allegedly unlawful surcharges. *See id.* at ¶¶ 67-78. Through Count Two, Plaintiff asserts violations of 29 U.S.C. §§ 1104 and 1106, the sections governing fiduciary duties and prohibited transactions under ERISA. *See id.* Plaintiff seeks declaratory relief, injunctive relief, various other forms of equitable relief, including disgorgement and restitution, as well as relief to the Plan. *See id.* at 28-30.

### III. DISCUSSION

**A.    Legal Standard**

"'A court faced with a motion to dismiss pursuant to both Rules 12 (b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.'" *Kumpf v. N.Y. State United Tchrs.*, 642 F. Supp. 3d 294, 304 (N.D.N.Y. 2022) (quoting *Mann v. N.Y. State Ct. of Appeals*, No. 21-CV-49, 2021 WL 5040236, *3 (N.D.N.Y. Oct. 29, 2021)). "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the

category of claim in suit ([*i.e.,*] subject-matter jurisdiction)." *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

When subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova*, 201 F.3d at 113).

In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted). In resolving a motion to dismiss, a court may also "'consider 'matters of which judicial notice may be taken.'" *Greenblatt v. Gluck*, No. 03-CV-597, 2003 WL 1344953, *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993)).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept

7

as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "'integral'" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Twombly*, 550 U.S. at 558, 570.

**B.      Article III Standing**

8

"Article III, Section 2 of the Constitution limits the subject-matter jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020) (citing *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019)). "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (citation and footnote omitted).

The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61).

"'Article III standing requires a concrete injury even in the context of a statutory violation.'" *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544 (2020) (quoting *Spokeo*, 578 U.S. at 341). And "'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (Roberts, C. J., concurring)).

"As with any other matter on which the plaintiff bears the burden of proof, each element of standing must be supported 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 119 (2d Cir. 2025) (quoting *Lujan*, 504 U.S. at 561)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Elias Bochner,*

9

*287 7th Ave. Realty LLC v. City of New York*, 118 F.4th 505, 518-19 (2d Cir. 2024) (quoting *Lujan*, 504 U.S. at 561).

## C.     Count One

Defendant contends that Count One must be dismissed because there is no private right of action under the Regulations and because Defendant is not a proper defendant as it is not a "group health plan" or "health insurance issuer." Dkt. No. 21-1 at 16-19.  The Court disagrees.

First, Plaintiff brings Count One for violation of ERISA's statutory anti-discrimination provisions (29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4(b)).  ERISA authorizes a participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1), as well as  "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan," *id.* § 1132(a)(3).  Defendant's argument, premised on citations to cases where plaintiffs merely alleged violations of ERISA's implementing regulations, *see* Dkt. No. 21-1 at 16-17 (citing *Halo v. Yale Health Plan*, 819 F.3d 42, 59 (2d Cir. 2016); *Chendes v. Xerox HR Sols.*, *LLC*, No. 16-CV-13980, 2017 WL 4698970 (E.D. Mich. Oct. 19, 2017); *Anderson v. Sotheby's Inc. Severance Plan*, No. 04-CV-8180, 2005 WL 1309056 (S.D.N.Y. May 31, 2005)), fails because, here, Plaintiff brings claims for violations of statutory provisions of ERISA. Indeed, as discussed below, federal courts across the country have considered the merits of claims brought for similar statutory violations.

Second, Defendant asks this Court to interpret Section 1182 to mean that "group health plan[s]" and "health insurance issuer[s]" are the only proper defendants to claims for

discrimination based on health status-related factors. *See* Dkt. No. 21-1 at 18-19. However, the terms "group health plan" and "health insurance issuer" do not define the only entities that can be held liable for a violation of ERISA's anti-discrimination provisions.

For purposes of Section 1182, ERISA defines a "group health plan" to mean "an employee welfare benefit plan[.]" 29 U.S.C. § 1191b(a)(1).[2] ERISA defines an "employee welfare benefit plan" to mean

> any plan, fund, or program which was heretofore or is hereafter ***established or maintained by an employer*** or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C.A. § 1002(1) (emphasis added). "The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C § 1002(5).

Plaintiff contends that "she brings claims on behalf of the Plan against [Defendant] under ERISA § 502(a)(2) and (a)(3) for its role as plan sponsor and administrator, alleging that [Defendant] imposed, collected, and retained, and misused unlawful surcharges in connection with its group health plan." Dkt. No. 23 at 23. And, Plaintiff further argues that "[n]othing in 29

---

[2] The "term 'health insurance issuer' means an insurance company, insurance service, or insurance organization . . . which is licensed to engage in the business of insurance in a State and which is subject to State law which regulates insurance . . . ." 29 U.S.C. § 1191b(b)(2). There is no dispute that Defendant is not a health insurance issuer under the facts of the present case.

U.S.C. § 1132(d) precludes suit against a plan sponsor; it simply provides that plans may be sued 'as an entity,' not that only plans may be sued." *Id.* The Court agrees.

According to the complaint, Defendant is the sponsor and administrator of the Glens Falls Hospital Health Plan. *See* Dkt. No. 1 at ¶¶ 1, 16. ERISA defines an "administrator" as, *inter alia*, (i) the person specifically so designated by the terms of the instrument under which the plan is operated; [or] (ii) if an administrator is not so designated, the plan sponsor[.]" 29 U.S.C. § 1002(16)(A). And, as relevant here, a "plan sponsor" is "the employer in the case of an employee benefit plan established or maintained by a single employer[.]" *Id.* § 1002(16)(B). In accordance with precedent in this Circuit, ERISA civil enforcement actions against employers in their role as administrators are cognizable. *See Levi v. RSM McGladrey, Inc.*, No. 12-CV-8787, 2014 WL 4809942, *8 (S.D.N.Y. Sept. 24, 2014) ("The proposed claim can therefore be reasonably construed as a claim against Defendant, not in its individual capacity, but rather in its capacity as plan administrator. Such a suit is cognizable") (citing *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) ("In a recovery of benefits claim, only the plan *and the administrators* and trustees of the plan *in their capacity as such* may be held liable") (emphasis added)); *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998) (indicating that an employer cannot be held liable for benefits under Section 1132(a)(1)(B) unless it is the designated plan administrator)).

Defendant provides no authority to support the conclusion that violations of Section 1182 are somehow exempt from the civil enforcement actions contemplated by Section 1132. Reading the statutory provisions as a whole, the Court sees no reason to find such exemption. *See Pharaohs GC, Inc. v. United States Small Bus. Admin.*, 990 F.3d 217, 226 (2d Cir. 2021) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme") (citing *Davis v. Mich.*

12

*Dep't of Treasury*, 489 U.S. 803, 809 (1989)).  Accordingly, taking the allegations in the complaint as true, as the Court must at this juncture, the Court finds Plaintiff has stated a cognizable claim against Defendant in Count One.

Defendant also argues that Plaintiff lacks Article III standing to bring Count One and/or fails to state a claim because: (1) she does not allege she uses tobacco; (2) even if Plaintiff had alleged she uses tobacco, tobacco use is not a health status-related factor; (3) "even if tobacco use was a health status-related factor, plans are statutorily permitted to charge different rates in return for adherence to programs of health promotion and disease prevention, and thus plans are allowed to offer reduced contributions for non-smokers"; and (4) a reasonable alternative standard "would be statutorily required, if at all, only for an individual for whom it is unreasonably difficult due to a medical condition to refrain from tobacco, or for whom it is medically inadvisable to attempt to refrain from tobacco," but Plaintiff does not allege she has any such medical condition.  Dkt. No. 21-1 at 8-9.  Although Defendant groups its standing and merits arguments together, the Court finds it appropriate to separate them because they raise distinct legal questions.  Defendant's first argument relates only to standing, the second and third attack the merits of the pleading, and the fourth presents a mixed question and will be addressed as both a standing and merits-based challenge.  The Court will now address each of these four arguments.

### 1. *Standing Arguments—Count One*

Defendant challenges only one standing requirement: whether Plaintiff has adequately alleged a concrete injury.  *See* Dkt. No. 21-1 at 13.  However, Defendant's first argument (Plaintiff lacks standing because she fails to allege she uses tobacco) misconstrues the alleged injury.  Plaintiff claims $20 was deducted from her biweekly paychecks for a tobacco surcharge,

but that Defendant did not satisfy the requirements to impose such surcharge.  *See* Dkt. No. 1 at

¶¶ 13, 32, 61-66.  Whether Plaintiff uses tobacco is entirely irrelevant.

Here, Plaintiff alleges that Defendant did not satisfy the statutory or regulatory requirements of ERISA.  *See* Dkt. No. 1 at ¶¶ 62-64.   The Court must assume these allegations are true for purposes of evaluating standing.  *See Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 154 (2d Cir. 1992) (citing *Warth v. Seldin,* 422 U.S. 490, 501 (1975)).  Plaintiff allegedly paid tobacco surcharges that Defendant was not legally authorized to levy; her payment of a surcharge that she had a statutory right not to be charged qualifies as a concrete injury for standing purposes.  *See Noel v. Pepsico, Inc.*, No. 24-CV-7516, 2026 WL 558118, *6 (S.D.N.Y. Feb. 27, 2026) ("Plaintiff's allegation [is] that she paid a surcharge that she contends was unlawful.  This allegation suffices to establish a concrete harm for standing purposes") (citing *Isayeva v. Diamond Braces*, No. 22-CV-4575, 2024 WL 1053349, *16 (S.D.N.Y. Mar. 11, 2024)); *see also Chirinian*, 2025 WL 2147271, at *4-5 (finding Article III standing in similar circumstances); *Lipari-Williams v. Mo. Gaming Co., LLC*, 339 F.R.D. 515, 524 (W.D. Mo. 2021) (same).

As for the fourth argument, Defendant contends Plaintiff has no standing because she does not allege that she has a medical condition that made is unreasonably difficult or medically inadvisable to refrain from tobacco and, therefore, Defendant was not statutorily required to offer a reasonable alternative standard.  *See* Dkt. No. 21-1 at 12-13.  Simply stated, Defendant argues that, even if there was a wellness program, Plaintiff would not have qualified.  But, this argument also misses the point.

Regardless of whether Plaintiff would have qualified to participate, she claims to have suffered the injury of a $20 biweekly tobacco surcharge despite Defendant's failure to implement

14

any wellness program, as statutorily required.  Courts have rejected similar arguments, even in scenarios where there was a wellness program implemented and the plaintiff's challenge was merely that the program was noncompliant.  *See, e.g.*, *Baker v. 7-Eleven Inc.*, No. 3:25-CV-01609, 2026 WL 473252, *2 (N.D. Tex. Feb. 19, 2026) ("Participation in the Program is irrelevant—neither ERISA nor Article III requires a plaintiff to enroll in an unlawful program to establish standing.  Baker's injury did not arise from her participation (or non-participation) in the alternative under the Program, but from 7-Eleven's deduction of a $27.70 premium from each of her paychecks.  Therefore, Baker plausibly alleges a concrete, traceable monetary injury caused by 7-Eleven's allegedly uncompliant Program which is redressable by the Court") (footnotes omitted).

Indeed, as the Southern District has explained, "several courts have recently held that plaintiffs have standing where they claim that to have paid a tobacco surcharge imposed pursuant to a noncompliant wellness program, regardless of whether they were directly impacted by the alleged shortcomings of the program." *Noel*, 2026 WL 558118, at *7 (collecting cases).  There is at least one outlier: in *Plesha v. Ascension Health Alliance*, the Eastern District of Missouri came to the opposite conclusion, holding that the plaintiff did not have standing to contest the defendant's plan disclosures because she had not alleged how the alleged deficiencies in the required disclosures impacted her behavior or caused her monetary injuries.  *See Plesha v. Ascension Health All.*, No. 4:24-CV-01459, 2026 WL 279321, *7 (E.D. Mo. Feb. 3, 2026).  In one of its notices of supplemental authority, Defendant urges this Court to adopt *Plesha*'s conclusion.  *See* Dkt. No. 32 at 1-3.  However, in refusing to rely on *Plesha*, the Southern District noted that "the court did not address . . . the argument that the various courts discussed above found persuasive—namely, that the failure to satisfy all of ERISA's requirements renders a

15

wellness program, as well as any surcharges applied thereunder, unlawful." *Noel*, 2026 WL 558118, at \*7 n.6. This Court agrees with the Southern District's reasoning and respectfully rejects the conclusion in *Plesha*.

For these reasons, the Court finds Plaintiff has plausibly alleged that Defendant, through failure to implement a compliant wellness program, has caused her monetary harm, and thus she has suffered a concrete injury in fact under Article III. *See Lipari-Williams*, 339 F.R.D. at 524 ("The standing requirement is satisfied here because Plaintiffs have alleged that Defendant caused them monetary loss by imposing a fee that was unlawful"). Defendant's motion to dismiss Count One for lack of standing is denied.

### 2. Merits Arguments—Count One

Defendant's second argument as to Count One is also unavailing. Defendant asks the Court to find that tobacco use is not a health-status related factor under Section 1182 because the statute does not explicitly say the words "tobacco use" in its eight-factor list. Dkt. No. 21-1 at 10. While technically true, such a narrow reading of the statute strains credulity—especially in light of the fact Defendant cites no case to support this interpretation.

Indeed, many district court decisions simply assume tobacco-based surcharges may constitute health-factor discrimination without elaborating. *See, e.g.*, *Noel*, 2026 WL 558118, at \*3; *Koelbl v. Sherwin-Williams Co.*, No. 1:24-CV-02043, 2025 WL 3562641, \*2 (N.D. Ohio Dec. 12, 2025); *Chirinian*, 2025 WL 2147271, \*1. The Northern District of Texas recently took a textualist approach to this question, carefully evaluating the ordinary meaning of the term "medical history"—one of the eight factors listed in Section 1182 *See Baker*, 2026 WL 473252, at \*4 ("Other cases seem to assume tobacco-based surcharges constitute health-factor discrimination. This Court prefers textualism to assumptions. So the Court lays the foundation

16

using its toolbelt of statutory interpretation").  Ultimately, in *Baker* the court concluded that tobacco use is a health status-related factor because, *inter alia*, "[r]eading 'medical history' to exclude tobacco use would ignore how the term is used in medicine and would improperly narrow the statute."  *Id.*  Having been provided with no legal authority to the contrary, the Court finds tobacco use is a health status-related factor.[3]

Defendant's third argument is that Defendant is permitted to offer premium discounts "in return for adherence to programs of health promotion and disease prevention."  Dkt. No. 21-1 at 10-11.  However, as Plaintiff correctly argues, the complaint alleges that Defendant *never offered a wellness program* (an allegation Defendant does not challenge in its present motion).  *See* Dkt. No. 23 at 14.  Thus, it is of no consequence that Defendant *can* offer premium discounts—the issue is whether Defendant actually offered an ERISA compliant program.  The Court rejects Defendant's third argument.

Defendant's fourth argument can be broken down into two prongs for purposes of evaluation the merits of Count One: (1) Defendant is not required to offer a reasonable alternative standard under Section 1182; and (2) even if the statute does require a reasonable alternative standard, a reasonable alternative standard must be provided only for an individual for whom it is unreasonably difficult due to a medical condition to refrain from tobacco, or for whom it is medically inadvisable to attempt to refrain from tobacco.  *See* Dkt. No. 21-1 at 11-13.  Defendant also contends that Count One fails to the extent Plaintiff claims violation of ERISA's notice

---

[3]  In one of its many responses to Plaintiff's numerous notices of supplemental authority, Defendant takes issue with *Baker*'s interpretation of "medical history."  *See* Dkt. No. 35 at 2-3. The Court disagrees that this interpretation tenders an "absurd result."  *Id.* at 2.  As explained in *Baker*, "the statutory list also includes 'evidence of insurability (including conditions arising out of acts of domestic violence).'  Domestic violence is an (unlawful) activity rather than a medical condition.  Congress did not write a list that excluded activities."  *Baker*, 2026 WL 473252, at *4 (footnote omitted).

17

requirements for the same reasons. *See id.* at 13. In addition to addressing Defendant's arguments regarding whether a reasonable alternative standard and notice are required, Plaintiff argues in response that the tobacco surcharge is facially unlawful because Defendant fails to offer any wellness program in the first instance. *See* Dkt. No. 23 at 9-10, 14-23. The Court agrees.

As with the prior argument, Defendant puts the cart before the horse. Regardless of how the Regulations implement the statutory goals of ERISA, Plaintiff's claim does not rest on whether Defendant was required to provide a reasonable alternative standard to any participant who did not meet the initial standard of being a nonsmoker or merely those who demonstrated medical hardship. Instead, Plaintiff's claim is that she was required to pay an unlawful surcharge. Therefore, the question is not whether Plaintiff would be entitled to a reasonable alternative standard absent a showing of medical hardship, but whether Defendant's wellness program complied with ERISA. If Defendant's wellness program failed to comply with the statutory requirements, the imposition of the tobacco surcharge on any participant was a violation of ERISA. *See Noel*, 2026 WL 558118, at *10 (engaging in a similar analysis and finding that "[w]hether [the p]laintiff herself would be statutorily entitled to a reasonable alternative standard is thus immaterial"); *Wilson v. Whole Food Mkt., Inc.*, No. 1:25-CV-00085, 2026 WL 196517, *11 (W.D. Tex. Jan. 20, 2026) ("Plaintiffs' claim does not depend on whether or not they were even eligible to participate in the cessation program; rather, the question is whether the cessation program is non-compliant, thereby rendering the surcharge Plaintiffs paid unlawful. Accordingly, they were not required to allege medical hardship, and failure to do so does not warrant dismissal of their unlawful surcharge claim").

Albeit, Defendant is correct that Section 1182 itself does not explicitly require a reasonable alternative standard. *See, generally*, 29 U.S.C. § 1182. But, merely looking at Section

18

1182 in a vacuum would ignore 42 U.S.C. § 300gg-4, which was added to ERISA by incorporation with the passing of the Affordable Care Act. *See* 29 U.S.C. § 1185d(a)(1). As discussed, Section 300gg-4 requires that "[i]f any of the conditions for obtaining a premium discount or rebate or other reward for participation in a wellness program is based on an individual satisfying a standard that is related to a health status factor . . ." the wellness program must (1) "be reasonably designed to promote health or prevent disease," (2) make available the "full reward" to all similarly situated individuals, (3) make available that full reward "at least once each year," and (4) "disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(1), (j)(3). [4] As the Court has determined tobacco use qualifies as a health status-related factor, the burden shifts to Defendant to show its wellness program complies with ERISA. *See Baker*, 2026 WL 473252, at *5 (citing *Cunningham v. Cornell Univ.*, 604 U.S. 693, 704 (2025)).

The glaring problem with Defendant's arguments as to the merits of Count One is (taking the allegations in the complaint as true, as the Court must) there is no wellness program at all. As

---

[4] As the issues presented at this stage of litigation rise and fall entirely on the text of ERISA's statutory provisions, with no need to look to the implementing Regulations, the Court does not engage in a *Loper Bright* analysis. *See Knight v. L H C Group Inc*, No. 6:25-CV-00263, 2025 WL 4351515, *5 (W.D. La. Nov. 18, 2025), *R&R adopted*, 2026 WL 513477 (W.D. La. Feb. 24, 2026) ("It is [the defendant's] position that because [the p]laintiff fails to plead that it was unreasonably difficult due to a medical condition for her to quit using tobacco products, her reasonable alternative standard claim must fail . . . . [The defendant] asks this Court to essentially disregard the DOL's 2013 regulation, which does not include the requirement that the alternative standard be only for those individuals who cannot satisfy the applicable standard due to a medical condition, citing *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2323 (2024). However, the Court need not decide this finite issue at this stage . . . . [I]t is of no matter that Plaintiff elected not to participate in the Plan's tobacco counseling program, and thus did not allege a personal medical condition, because Plaintiff has plausibly, in a 31-page detailed Complaint, alleged that the tobacco cessation wellness program, including LHC's 'reasonable alternative standard,' falls short of ERISA and *both* the PHSA and the DOL's 2013 regulations") (internal citations and quotation marks omitted) (emphasis in original).

such, setting aside any interpretation of the Regulations, Defendant has failed to comply with ERISA's statutory requirements entirely.  Simply put, the Court cannot evaluate the technical compliance of a wellness program that does not exist, so Defendant's reasonable alternative standards and notice arguments are irrelevant.

This case, therefore, presents a factual issue slightly different than the cases cited by the parties in their submissions.  Indeed, there are numerous recent district court decisions that analyze a wellness program's compliance with ERISA's requirements of a "full reward," disclosure of a reasonable alternative standard, and frequency of the availability of the "full reward."  *See, e.g.*, *Bokma*, 783 F. Supp. 3d at 895-97; *Noel*, 2026 WL 558118, at *9-13; *Plesha.*, 2026 WL 279321, at *4-6; *Wilson*, 2026 WL 196517, at *7-11 ; *Chirinian*, 2025 WL 2147271, at *7-11; *Mehlberg v. Compass Grp. USA, Inc.*, No. 24-CV-04179, 2025 WL 1260700, *4 (W.D. Mo. Apr. 15, 2025); *Baker*, 2026 WL 473252, at *5-6.  However, in each of these decisions there was, at the very least, a wellness program to evaluate.  Here, Plaintiff's allegation that Defendant unlawfully levied a tobacco surcharge in the complete absence of a wellness program ends the Court's inquiry at this stage of litigation.

Accordingly, the Court denies Defendants Rule 12(b)(6) motion to dismiss Count One.

**D.      Count Two**

Defendant argues that Count Two must also be dismissed for lack of standing and failure to state a claim.  *See* Dkt. No. 21-1 at 19-25.  Specifically, Defendant contends: (1) Plaintiff lacks standing to bring Count Two "because she has not plausibly and clearly pled a concrete injury to herself, for [the same reasons as Count One]; and (2) Plaintiff "has not plausibly alleged any fiduciary breach or prohibited transaction, let alone any loss to the Plan" because (i) Defendant was acting as a settlor determining which benefits its employees would receive, as opposed to a

fiduciary managing plan assets on behalf of its employees, and (ii) Plaintiff does not plausibly allege that her "contributions were used for any purpose other than to offset Plan costs." *Id.*

### 1. Standing—Count Two

As with Count One, the Court finds Plaintiff has sufficiently alleged standing to pursue Count Two. The allegations underlying this claim are that Defendant breached its fiduciary duty by failing to, *inter alia*, "adequately and regularly review the terms of its tobacco wellness program and the accompanying communications to participants to ensure they complied with ERISA and the regulations" and collecting an "unlawful and discriminatory tobacco surcharge[.]" Dkt. No. 1 at ¶ 71. Further, Plaintiff alleges that Defendant "administered a program that disproportionately benefited itself at the expense of Plan participants" and "by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, [Defendant] caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest— namely, itself—and improperly used Plan assets for its own financial advantage." *Id.* at ¶¶ 73-74. In sum, Plaintiff claims that Defendant had a duty to ensure compliance with ERISA and that its failure to do so, in furtherance of their own financial benefit, caused her and other plan members, as well as the Plan itself, injury.

Regardless of the merits of Count Two, Plaintiff has sufficiently alleged that she was injured by Defendant's improper conduct for standing purposes. Plaintiff seeks various forms of relief that would remedy the alleged harm, including "restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations" and "disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA[.]" Dkt. No. 1 at 29. For the same reasons she has standing to bring Count One, Plaintiff's allegations

21

of injury arising from the unlawful imposition of the tobacco surcharge are sufficient to establish standing for Count Two at the pleading stage. *See Wilson*, 2026 WL 196517, at \*6 ("Plaintiffs assert that Defendants breached their fiduciary duties in many ways, including by administering a wellness program in a manner that violated ERISA and its implementing regulations, by assessing and collecting the allegedly unlawful surcharge, by failing to act solely in the interests of participants and beneficiaries, and by retaining the surcharges collected . . . . Because these claims depend on whether Defendants have violated ERISA through its imposition of the tobacco surcharge, Plaintiffs have standing to bring their fiduciary duty claims for the same reasons described above"); *Waggoner v. The Carle Found.*, No. 24-CV-2217 (C.D. Ill. Sept. 15, 2025), Dkt. No. 27 at 18 n.3 (finding the plaintiff had standing to assert fiduciary duty claims based on allegations "mirror[ing]" those regarding tobacco surcharge, as both allege concrete injury in the form of monetary harm).[5]

Accordingly, the Court declines to dismiss Count Two for lack of standing.

### 2. *Merits Arguments—Count Two*

Plaintiff brings her breach of fiduciary duty claim pursuant to 29 U.S.C. § 1132(a)(2). *See* Dkt. No. 1 at ¶ 78.

"A claim for breach of fiduciary duty under ERISA requires three elements: '1) defendant was a fiduciary of the plan, 2) defendant was acting in that capacity, and 3) defendant breached a fiduciary duty.'" *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1025 (8th Cir. 2022) (citation

---

[5] Although the District of Rhode Island reached the opposite conclusion in *Williams v. Bally's Mgmt. Grp., LLC*, No. 1:25-CV-00147, 2025 WL 3078747, \*6 (D.R.I. Nov. 4, 2025), this Court agrees with the Southern District of New York and Western District of Texas that "*Williams* 'conflate[d] the merits of a fiduciary breach claim, which does require loss or harm to the Plan, with the standing inquiry,'" *Noel*, 2026 WL 558118, at \*8 (quoting *Wilson*, 2026 WL 196517 at \*6 n.7). Therefore, this Court also respectfully disagrees with *Williams* on the issue of standing.

omitted).  "As the Supreme Court has explained, '[i]n every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary . . . when taking the action subject to complaint.'"  *Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-CV-541, 2021 WL 5359769, *18 (S.D. Ohio Nov. 17, 2021) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)) (alterations in original).  "A defendant acts in a fiduciary capacity when undertaking discretionary acts with respect to plan management or administration, such as 'selecting investments, exchanging one instrument or asset for another, and so on.'"  *Noel*, 2026 WL 558118, at *13 (quoting *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014) (*per curiam*)).  "But 'ERISA's fiduciary duty requirement simply is not implicated where an employer, acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan,' . . . 'such as establishing, funding, amending, or terminating a plan[.]'"  *Id.* (quoting *Amatangelo v. Nat'l Grid USA Serv. Co.*, No. 04-CV-246S, 2011 WL 3687563, *6 (W.D.N.Y. Aug. 23, 2011), *aff'd sub nom. Argay v. Nat'l Grid USA Serv. Co.*, 503 Fed. Appx. 40 (2d Cir. 2012) (summary order); *Coulter*, 753 F.3d at 367) (internal citations omitted).

Even assuming, without deciding, that Defendant was acting in a fiduciary capacity, the Court agrees with Defendant that Plaintiff's breach of fiduciary duty claim must be dismissed because Plaintiff does not plausibly allege that the Plan suffered any losses from Defendant's alleged fiduciary breaches, as required to bring a Section 1132(a)(2) action. [6]

---

[6]  The Court is not necessarily convinced that Plaintiff has plausibly alleged that Defendant was engaged in fiduciary conduct because mere accusations that a defendant is carrying out the Plan as written (as opposed to accusations of improperly executing discretionary functions) do not state a claim for breach of fiduciary duty.  *See Noel*, 2026 WL 558118, at *13 ("[T]he distinction between creation (a settlor function) and implementation (a fiduciary function) is illusory where the [plaintiff] alleges only that a discriminatory wellness program was implemented as created . . . .  Because [t]here can be no breach of fiduciary duty where an ERISA plan is implemented according to its written, nondiscretionary terms, . . . these allegations are deficient") (citations and

A suit under Section 1132(a)(2) is "brought in a representative capacity on behalf of the plan as a whole," *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985), and therefore "does not provide a remedy for individual injuries distinct from plan injuries," *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).  As such, a plaintiff must show that there was a loss to the *plan* to bring a claim pursuant to Section 1132(a)(2).  *See Chirinian*, 2025 WL 2147271, at *11 ("'[I]f individual plan participants suffer losses, but the plan does not, the trustee is not personally liable for damages'") (quoting *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919-20 (8th Cir. 1994)).

First, Plaintiff alleges that "[a]s a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks."  Dkt. No. 1 at ¶ 77.  Plaintiff fails to state a claim based upon this allegation because individual injuries alone cannot support a Section 1132(a)(2) claim.  *See LaRue*, 552 U.S. at 256.

Second, Plaintiff contends that Defendant engaged in self-dealing, which meant, according to Plaintiff, "the Plan ended up with fewer assets than it should have forcing all participants, including [Plaintiff], to pay more out-of-pocket than they otherwise would have."  Dkt. No. 23 at 25.  However, the Court cannot accept this characterization.  The Plan was not harmed by Defendant offsetting its own contributions with the surcharge proceeds; the participants paying the surcharge were the parties injured.  As discussed, "'§ 1132(a)(2) does not provide a remedy for individual injuries distinct from plan injuries.'"  *Noel*, 2026 WL 558118, at *14 (quoting *Williams*, 2025 WL 3078747, at *5).  Therefore, Plaintiff's allegations that Defendant used the surcharge

---

internal quotation marks omitted).  It is not necessary to reach this issue, however, because the Court finds Count Two must be dismissed even if Defendant was acting in a fiduciary capacity.

24

proceeds to offset its own contributions, *see* Dkt. No. 1 at ¶¶ 73, 75, does not state a claim for breach of fiduciary duty because Plaintiff fails to allege injury to the Plan itself.

In support of this self-dealing argument, Plaintiff cites *Grodotzke v. Seaford Ave. Corp.*, 17 F. Supp. 3d 185, 193 (E.D.N.Y. 2014), where the court held the defendants "breached their duties by commingling plan assets with company assets and using those monies to pay their creditors instead of forwarding the plan assets to the Funds." *See id.* However, *Grodotzke* is inapplicable because, here, there are no plausible allegations that Defendant used the surcharge proceeds to pay third parties. Instead, Plaintiff claims Defendant contributed these funds into the Plan and reduced its own contributions accordingly. *See* Dkt. No. 1 at ¶¶ 69, 73-75. Again, even accepting these self-dealing allegations as true, this conduct caused harm to the individuals from whom the surcharge was collected, but cannot reasonably be interpreted to have caused the Plan itself any injury. *See Noel*, 2026 WL 558118, at *14 ("[The amount contributed to the Plan would seemingly be the same, regardless of whether the contributions were coming from Defendants or tobacco-using participants"); *Chirinian*, 2025 WL 2147271, at *12 ("[E]ven if collecting less money from Plan participants meant that [defendant] would have to contribute more to the Plan, from a balance-sheet perspective, the Plan is no worse off").

Third, Plaintiff argues that Defendant engaged in prohibited transactions because the surcharge proceeds are Plan assets and Defendant misappropriated these Plan assets for its own benefit. *See* Dkt. No. 23 at 28. However, "withheld wages do not become plan assets until 'the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets,' which can be up to ninety days from the date that the funds were withheld[.]'" *Noel*, 2026 WL 558118, at *15 n.14 (citing 29 C.F.R. § 2510.3-102(a), (c); *Fisher v. GardaWorld Cash Serv. Inc.*, No. 3:24-CV-00837, 2025 WL 2484271, *8 (W.D.N.C. Aug. 28,

25

2025)).  Thus, even if the surcharge proceeds eventually became Plan assets, the complaint is devoid of allegations that Defendant retained these funds beyond the ninety-day limitation. Plaintiff merely alleges that the funds were used to offset Defendant's contributions to the Plan. In other words, these employee contributions were contributed to the Plan, but Defendant was required to pay less from its own accounts as a result.  *See* Dkt. No. 1 at ¶¶ 74-75.  Because the complaint is devoid of allegations that the Plan explicitly provides that unpaid contributions are Plan assets, Plaintiff has not adequately alleged a violation of 29 U.S.C. § 1106.  *See Fisher*, 2025 WL 2484271, at *8 ("Case law considering the issue has generally determined that 'unpaid employer contributions are not assets of a fund [or Plan] unless the agreement between the fund and the employer specifically and clearly declares otherwise'") (citation and footnote omitted).

Plaintiff's argument that Defendant breached its duties by "fail[ing] to provide notice and fail[ing] to review the terms of the surcharge scheme to ensure compliance with ERISA[,]" Dkt. No. 23 at 26, fails to state a claim for the same reasons.  *See Noel*, 2026 WL 558118, at *14 (rejecting similar argument because, *inter alia*, the plaintiff failed to allege harm to the plan).

For these reasons, the Court finds Plaintiff has failed to allege harm to the Plan and grants Defendant's motion to dismiss Count Two pursuant to Rule 12(b)(6).

## IV. CONCLUSION

After carefully considering the parties' filing, the record in this matter, and the applicable law, the Court hereby

**ORDERS** that Defendant's motions to dismiss (Dkt. No. 21) is **GRANTED in part and DENIED in part**;[7] and the Court further

---

[7] As a result of this Memorandum-Decision and Order, Plaintiff's breach of fiduciary duty claim (Count Two) is dismissed.  Plaintiff's claim for unlawful imposition of a discriminatory surcharge (Count One) survives.

**ORDERS** that the Clerk shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated:  March 26, 2026
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

27